Johnson, J.
On trial of the case motions by the defendant, made at the close of the plaintiff’s evidence and at the close of all of the evidence, to in *308 struct the jury to return a verdict in its favor, were overruled by the court, and it is contended that the court erred in these holdings. An instructive analysis of the evidence is presented in the brief of counsel for plaintiff in error, and a vigorous argument is made in support of his position.
The record discloses that there was considerable conflict in the evidence with reference to the controlling facts which were put in issue by the pleadings, viz., the location of the horse and carriage at the time of the injury, the conduct of decedent, the question of his negligence, the rate of speed at which the horse was being driven by him, the manner in which the car of the defendant was being operated, and the rate of speed at which it was going.
There was very substantial evidence in support of the claims of the contending parties as to these matters, and the determination of the issues of fact was entirely for the jury under proper instructions of the court.
The chief reliance of the plaintiff in error is upon the contention that the court erred in its charge to the jury, and that the error was accentuated by the action of the court upon a request made for further, instructions. The record shows that after the jury had retired and had been in deliberation for some three hours, they returned into court and asked for further instructions, and that the court said to them:
“I will read it to you, gentlemen, having it in pencil (form before me, that part of the charge which has been requested by your foreman:
*309 “ Tn other words, gentlemen of the jury, the decedent, Albert N. Gillette, may have been guilty of negligence in driving upon this track as he did, yet such negligence will not defeat the right of the plaintiff to recover, if the motorman saw the danger in which he was placed in time to have avoided colliding with him by the exercise of reasonable care and by the use of all the means at his command, and negligently failed to exercise such reasonable care. That is, if you find that there was negligence upon the part of the railway company, and negligence upon the part of Gillette, in driving upon this track in front of an approaching car, then you will proceed and examine the conduct of the motorman after he had discovered, or, by the exercise of ordinary care, ought to have discovered, the danger in which the said Albert N. Gillette was at the time. As we have said, it was the duty of the motorman to have his car under control; that is, the car must be in the power of the motorman to such an extent as that when he saw this horse and buggy on the track, or when, by ordinary care in his duty of looking for vehicles, he ought to have seen this horse and buggy on the track, he could stop his car within a reasonable time and distance so as to avoid, if possible, the collision.’ ”
The petition contained the following: “That when the said decedent started across the track of the defendant’s railway, the motorman in charge of said car could see the decedent starting across or upon the track with his said horse and buggy more than three hundred feet away, and that said motorman knew that at the speed he was running *310 the car it would strike said horse and buggy before it could cross said track; but the plaintiff avers that the decedent did not know the speed of the car and could not learn its speed from his position, and avers that decedent reached the track when the car was at least three hundred feet away, and had a right to cross said track, and that the agents, servants and employes of the defendant had ample time, after seeing, as they' did, the decedent crossing the track, to check the speed of the car and stop it and thereby have prevented the collision.”
In Railroad Co. v. Kassen, 49 Ohio St., 230, it is held:
“It is a well settled rule of the law of negligence, that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of the injury of which he complains, if the defendant, after he became aware, or ought to have become aware, of the plaintiff’s danger, failed to use ordinary care to avoid injuring him, and he was thereby injured.
“The rule, that the negligence of the injured party, which proximately contributes to the injury, precludes him from recovering, has no application where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former party is exposed, to use a proper degree of care to avoid injuring him.”
The case just referred to was reviewed in Drown v. The Northern Ohio Traction Co., 76 Ohio St., 234. In the second proposition of the syllabus it is held: “The doctrine of ‘last chance,’ as formulated in Railroad Co. v. Kassen, 49 Ohio St., 230, para *311 graph one of syllabus, does not apply where the plaintiff has been negligent, and his negligence continues, and, concurrently with the negligence of defendant, directly contributes to produce the injury; it applies only where there is negligence of the defendant subsequent to, and not contemporaneous with, negligence by the plaintiff so that the negligence of defendant is clearly the proximate cause of the injury and that of the plaintiff the remote cause.”
It seems to be now generally agreed that this doctrine of “last chance” is a humane modification of the strict and rigid rule which denies to a plaintiff under all circumstances any recovery for the negligence of a defendant, where the plaintiff has himself contributed to the injury by his own negligence. The application of this rigid rule was in many cases found to work injustice, for it would surely be unjust to hold that one should be denied the protection of the law because of acts of carelessness on his part, which were followed by subsequent acts of negligence on the part of another, which latter acts were the proximate cause of injury. It would, in effect, be holding that where, for example, one goes upon a railway track without exercising proper precautions as to danger, the railway company would be relieved, thereafter, of the duty to exercise ordinary care for his safety. Where one knows of another’s negligence and the circumstances are such that the former has control of the situation, this knowledge and control impose on him as to his subsequent acts an affirmative duty to use ordinary care to avoid injury.
*312 In The Steubenville & Wheeling Traction Co. v. Brandon, Admr., 87 Ohio St., 187, it is held that “where the motorman of a street car being operated on a public street in a much frequented part of a city, discovers, or by the exercise of ordinary care and watchfulness should discover, that the driver of a smaller vehicle is about to cross the track at a street crossing, in 'front of such car, it is the motorman’s duty to use ordinary vigilance to stop or check the car in order to avoid a collision; and the fact that such driver máy have omitted to look for the approach of the car will not, as matter of law, defeat his right to recover for injury from a collision with such car if the motorman has not used such vigilance.”
The court, in the opinion, at page 196, say: “But, assuming that Brandon was guilty of some riegligence in driving on the track, yet if the motorman, in the exercise of even ordinary care, after he saw thé horse and appreciated Brandon’s peril, had time and opportunity to avoid the possible consequences by checking the car, and neglected to so exercise such care, such neglect would be negligence and might properly be regarded as the proximate cause of the injury.”
However, in view of the situation disclosed by the undisputed facts in this case, the objection made to the charge is wholly immaterial.
It is shown by the motorman’s own testimony that he saw the horse and buggy, and actually had it in constant view from the time his car reached the top of a hill, several hundred feet away from where the buggy was, until he struck it. There is *313 a dispute between the witnesses as to the speed of the car and as to whether it was slackened as it ran on toward the crossing where the decedent was. That the motorman fully appreciated the danger of Gillette is shown by his own testimony and that of other witnesses. He says that as he started over the hill he noticed this buggy and started blowing the whistle. Other witnesses testify to the fact that there were a number of sharp, shrill whistles blown as the car proceeded towards where Gillette was. There was no occasion for the court to use the language complained of, “or when, by ordinary care in his duty of looking for vehicles, he ought to have seen this horse and buggy on the track.” But the use of this language could not have confused or misled the jury, because it must have found that the motorman actually saw the horse and buggy in ample time to have stopped his car. It is not conceivable that the verdict of the jury could have been influenced in any degree by the inapt use of the words quoted. Even if it be conceded that the words were erroneously used, no prejudice could have resulted to the defendant.
In 2 Thompson on Negligence (2 ed.), Section 1629, the rule is stated as follows: “Although a person comes upon the track negligently, yet if the servants of the railway company, after they see his danger, can avoid injuring him, they are bound to do so. And, according to the bettér view with reference to injuries to travelers at highway crossings, — as distinguished from injuries to trespassers and bare licensees upon railway tracks at places where they have no legal right to be, — the servants *314 of the railway company are bound to keep a vigilant lookout in front of advancing engines or trains, to the end of discovering persons exposed to danger on highway crossings; and the railway company will be liable for running over them if, by maintaining such a lookout and by using reasonable care and exertion to check or stop its train, it could avoid injury to them.”
In Railroad Co. v. Kassen, supra, the material facts were: The company was running two trains in the same direction about two hours apart. Kassen fell from the rear platform of the forward train to the track, sustaining injuries which disabled him from leaving his position of danger on the track; and while in that condition he was killed by the following train. The employes of the company operating the forward train knew that he had fallen and was in a place of danger. Judgment against the company was affirmed in that case, and in the syllabus the rule of law is stated, viz.: “It is a well settled rule of the law of negligence, that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of the injury of which he complains, if the defendant, after he became aware, or ought to have become aware, of the plaintiff’s danger, failed to use ordinary care to avoid injuring him, and he was thereby injured.”
That case is distinguished from The Erie Rd. Co. et al. v. McCormick, Admx., 69 Ohio St., 45. McCormick had, for a number of years, been a trackwalker on a portion of the road of the defendant company, which included a bridge. He was struck by one of the company’s trains while on the *315 bridge, receiving injuries from which he died. It was shown that he crossed the bridge at least twice daily and had full knowledge of the whole situation. The court say, at page 51: “There is no statute requiring the construction of a railroad bridge in any other manner than that in which this bridge was. constructed; certainly there is no common knowledge that different methods of construction prevail, nor was there any evidence to that effect. There was, therefore, shown no duty whatever resting upon the company to construct its bridge otherwise; and if there had been such duty it is entirely clear from the plaintiff’s own case that, with full knowledge of the condition acquired through ten years of service, he had acquiesced in that condition, and had thereby waived a right of action in consequence of it.” Concerning the rule in such a case the court say, at page 53: “The concrete rule upon the subject is, that if one is upon the track of a railway company by his own fault and in peril of which he is unconscious, or from which he cannot escape, and these facts and conditions are actually known by the engineer, it is his duty to exercise all reasonable care to avoid the infliction of injury. It does not impose the duty to exercise care to discover that one so upon the track is in a place of danger, but it does impose a duty to be exercised upon actual discovery.”
The facts in that case and the relation of the parties to each other were entirely different from the facts and relation in the case we have here. McCormick was not at a public crossing, or at any other place where the public had a right to be, and *316 the court carefully point out the situation and the circumstances under which McCormick happened to be on the bridge, and say “with full knowledge of the condition acquired through ten years of service, he had acquiesced in that condition, and had thereby waived a right' of action in consequence of it.” . ■
We think the rule stated in Thompson on Negligence, which we have hereinbefore quoted, is well founded in reason and authority, and in view of the undisputed facts shown in this record it is wholly unnecessary to review the large number of cases touching the question. They could be of no assistance for the purposes of this case. Even if it be conceded that the trial court erred in including in its charge the words, “or, by the exercise of ordinary care, ought to have discovered,” as claimed by the plaintiff in error, .the error could not prejudice the defendant’s rights under the circumr stances alluded to.
There was the usual variance in the details given by the different witnesses and there was testimony directly supporting the contentions of each of the parties. But as to the actual view and knowledge of the motorman of the entire situation there is no dispute.- Mr. Stickney, a witness for the plaintiff, testified that he was a passenger on the car at the time; that the car was running about twenty miles an hour, and that there was no change in the speed of the car after it left the top of the hill until it struck the buggy. He testified that when the “sharp, shrill whistle” was sounded he got up and *317 looked out of the car. His mind was evidently-fixed on the transaction.
The testimony of the motorman shows that he had actual view and knowledge of the entire physical situation from the time he started down, the hill referred to; that just as the car started over the hill he noticed the buggy; and that he “started blowing the whistle and applied a little air.” To quote his exact words: “I commenced blowing the whistle again, and it seemed like the horse was going to stop, so I released my air again.” These steps were repeated until the collision.
As above stated, other witnesses testified to other details. It was the function of the jury to determine the ultimate facts from the evidence and to determine whether or not the motorman had, in full view of the entire situation, relied entirely on his whistle; whether or not he had failed to perform his duty to maintain proper control of the car, in. order to be able to stop it if necessary to avoid injury; and whether or not he used ordinary vigilance to stop or check the car under the circumstances shown by the evidence.
With reference to Gillette, it is not shown whether or not he looked from behind the curtain which was on his buggy. As was said in the Brandon case, supra, at page 195: “It is possible he did look and, mistaking the speed of the car, thought he could safely cross, thus attempting to exercise an undoubted right in a public street. If he did it would be a question for the jury whether a man of ordinary prudence, situated as he was then situated, would have done as he did, * * * *318 The driver of such a vehicle is not, in the use of the street, a trespasser, nor a licensee, but one pursuing an undoubted right, and the question always is, did he, in the pursuing of that right, exercise ordinary care ? * * * But, assuming that Brandon was guilty of some negligence in driving on the track, yet if the motorman, in the exercise of even ordinary care, after he saw the horse and appreciated Brandon’s peril, had time and opportunity to avoid the possible consequences by checking the car, and neglected to so exercise such care, such neglect would be negligence and might properly be regarded as the proximate cause of the injury.”
For the reasons given, we think it clear that there is no error shown in this record prejudicial to the defendant in the trial court, and the judgment will be affirmed.

Judgment affirmed.

Wanamaker, Newman and Donahue, JJ., concur.